ALVINA REBECCA CONRADSON v. LLOYD VINKEMEIER AND ANOTHER.
WILLARD CONRADSON v. SAME.[1]

February 1, 1952.

Nos. 35,582, 35,583.

[1]Reported in 51 N. W. (2d) 651.

538.

*Ray G. Moonan* and *John M. Fitzgerald,* for appellants.
*Meagher, Geer & Markham,* for respondents.

KNUTSON, JUSTICE.

Appeals from orders denying defendants' motion for judgment notwithstanding the verdicts or for a new trial.

Separate actions were commenced by plaintiffs to recover damages for personal injuries and property damage resulting from a collision between an automobile owned and driven by plaintiff Willard Conradson and one owned by defendant Lloyd Vinkemeier and driven by his wife, defendant Irmgard Vinkemeier. Plaintiff Alvina Conradson, who is the wife of Willard, was riding with him as a guest in his automobile at the time of the collision. The two cases were consolidated for trial and have been consolidated for hearing in this court.

During the early part of 1949, plaintiffs were moving their belongings from St. Paul to Fairfax, preparatory to taking up their residence at that place, where Mr. Conradson had accepted a call as a Lutheran minister. On the evening of May 24, 1949, they were returning to the Twin Cities from Fairfax in their 1937 Pontiac automobile, to which was attached an empty two-wheel trailer. They entered trunk highway No. 212 at its junction with highway No. 5 about five miles west of Norwood and then proceeded in an easterly direction on highway No. 212. Riding in the Conradson

car in addition to Mr. Conradson were one Mr. Bronstad, a friend, who rode in the front seat with Mr. Conradson, who was driving, and Mrs. Conradson and their two small children, who occupied the back seat. It was rainy and dark during the evening. Highway No. 212 is a concrete pavement. Conradson testified that, while the pavement was wet, it was not slippery enough to interfere with driving. He stated that during the trip he had driven between 45 and 50 miles per hour. In this he was corroborated by one Donald Hiveley, a salesman who followed the Conradson car most of the distance from Fairfax to the point of the collision.

Defendants live on a farm south of the highway about a mile east of Cologne. At that point a driveway runs from their farm home to the highway. The highway west of defendants' driveway is slightly upgrade, the crest of the incline being reached at a point about one-tenth of a mile west of the driveway.

On the evening of the collision, defendant Irmgard Vinkemeier was driving her husband's 1948 Chevrolet automobile in a westerly direction. She was followed at a distance of about two or three car lengths by one Ralph G. Herrmann. When Conradson reached the crest of the hill mentioned above, he observed the lights of these two cars approaching him from the east. All parties were then on their own side of the highway. Conradson estimated that when he first observed the approaching lights the distance between his car and the two approaching from the east was about 800 feet. As Mrs. Vinkemeier approached her driveway, she made a left-hand turn, intending to enter the driveway. The Conradson car was then about 50 or 60 feet away, traveling about 45 to 50 miles per hour. When the Vinkemeier car had traveled far enough so that the front wheels were on the edge of the shoulder on the south side of the highway, the two cars collided. The Conradson car, after striking the Vinkemeier car, careened off it and struck the Herrmann car. Willard Conradson was rendered unconscious when he hit the first car. Mrs. Vinkemeier testified that before turning to the left she rolled down her window and extended her arm, giving a signal for a left turn. Conradson testified that he

saw no signal. All cars involved were traveling with their lights dimmed.

After the collision, the Vinkemeier car came to rest in the ditch 15 or 20 feet east of their driveway and about 19 feet south of the south edge of the highway, facing in a northeasterly direction. The Herrmann car came to rest some 60 to 70 feet east of the driveway in the north ditch about 21 feet north of the north edge of the highway, pointing in a northerly direction. The Conradson car came to rest on the pavement about 140 to 160 feet east of the driveway.

All the occupants of the Conradson car, except the driver, were asleep at the time of the collision. Conradson suffered some personal injuries, and the children escaped with minor injuries. Mrs. Conradson was severely injured. The injured people were taken to a hospital at Waconia by Donald Hiveley. Mrs. Conradson was treated by Dr. Harold D. Nagel for severe shock and other injuries which will be mentioned later. She was removed from the hospital in Waconia to her home in Fairfax on June 28 and was thereafter under the care of Dr. Glenn Nelson both at home and in the hospital there.

After coming under the care of Dr. Nelson, Mrs. Conradson complained of an involuntary dripping of urine. Dr. Nelson testified that in his opinion the nerves which control the functioning of the bladder had been injured in the accident, resulting in a partial loss of control.

After the case had been pending for some time, plaintiffs moved the court to join Ralph G. Herrmann as an additional party defendant. The motion was granted. The complaint was thereupon amended so as to allege negligence on the part of Herrmann. At the commencement of the trial, over the objection of defendants Vinkemeier, plaintiffs were permitted to dismiss without prejudice as to Herrmann.

Defendants contend: (1) That Conradson was guilty of contributory negligence as a matter of law; (2) that the court erred in permitting Dr. Nelson to testify to a nerve injury as the cause of the lack of control over Mrs. Conradson's bladder; (3) that plain-

tiffs' counsel was guilty of such misconduct as to require a new trial; (4) that the jury likewise was guilty of misconduct; (5)' that the verdict is so excessive as to be based on passion and prejudice; and (6) that it was error to dismiss as to defendant Herrmann.

As we understand defendants' first contention, it is that the evidence conclusively establishes that Conradson was traveling at such an excessive speed as to constitute contributory negligence as a matter of law. This contention is based on an alleged violation of M. S. A. 169.14, which reads:

"Subdivision 1. No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

\* \* \* \* \*

"Subd. 3. The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

And the further claim is made that the physical facts conclusively show that the Conradson car was traveling much faster than the testimony would indicate.

There is no testimony of any witness to contradict that of Mr. Conradson and his witness Hiveley that Conradson was traveling 45 to 50 miles per hour. Obviously, the part of the statute requiring a reduction in speed when approaching a hill crest was not applicable, for the reason that the Conradson car had passed the crest of the hill and was on the downgrade when the collision occurred. Failure to decrease his speed when approaching the crest of a hill, even if it could be said that the evidence would so

indicate, would not constitute a proximate cause of the accident where the collision occurred one-tenth of a mile after the crest of the hill had been passed. The only special hazard which existed was the rain that was falling. It was for the jury to determine whether the speed was excessive under the existing conditions.

Nor are the physical facts, which consist only of the relative position of the cars after the accident, of such convincing force that we must disregard the testimony of the witnesses. It must be kept in mind that Conradson lost consciousness after striking the first car, and thereafter his car proceeded by the full force of its momentum without benefit of brakes or any other deterrent until it had spent its force. It was for the jury to determine whether the physical facts were more convincing than the testimony of the witnesses, and its determination of that question of fact on such evidence may not be disturbed on appeal.

■ Dr. Nelson testified that in his opinion swelling of the soft tissues, including the spinal cord, injured the second, third, and fourth sacral nerves, causing the involuntary discharge of urine of which Mrs. Conradson complained when she came under his care. Defendants contend that there was no foundation for such opinion evidence. Mrs. Conradson did not complain of such "dribbling" to Dr. Nagel. She testified that she did complain to the nurses at that time that she was moist and wanted better care, but she did not realize that she was passing water. She also stated that she had had no such trouble prior to the accident. In giving his opinion, Dr. Nelson took into consideration the fact that she had so complained to the nurses, as well as his examination of the patient after she had come under his care. Under these circumstances, it was not error to permit him to express his opinion.

Defendants complain also of the manner in which the opinion of Dr. Nelson was handled by the trial court. Dr. Nelson was first permitted, without objection, to state his opinion as to the cause of the involuntary dribbling. Defendants' counsel later moved to strike the opinion on the ground that the foundation was insufficient. The court denied the motion but, after considering the mat-

ter, granted the motion. Plaintiffs then proceeded to lay the necessary foundation, and the doctor was again asked for his opinion, based on a hypothetical question, after which a motion to strike was denied. Dr. Nelson was thoroughly cross-examined. The doctor's opinion regarding future disability occasioned by such dribbling was stricken, and the jury was instructed to disregard it. In its charge to the jury, the court withdrew any damages for future disability based on such dribbling. We do not believe that defendants were prejudiced by the manner in which the matter was handled.

Defendants next contend that there should be a new trial because of misconduct of counsel in referring to the bladder injury and in other respects. We have carefully examined the argument of counsel. The preceding argument of defendants' counsel is not included in the record. No exceptions appear to have been taken. We do not believe that the statements to which defendants now object were so prejudicial as to warrant a new trial.

■ During the trial it developed that one of the jurors who knew Dr. Nagel was seen talking to him. The court, upon learning what had happened, called the doctor back to the stand and closely questioned both the doctor and the juror to ascertain if the conversation had any relation to the trial. Both denied that it had. The juror stated that at one time she had worked in a telephone office next to the doctor's office and that they had not seen each other for some time. When they met at the trial, they asked each other how they were. The court was satisfied that the parties had not discussed the case. Counsel for defendants thereupon made the following statement:

"So far as I am concerned, I know Doctor Nagel; know him as a very fine type of man and he wouldn't in any manner talk to a ·juror about a case he is on. It is unfortunate that it happened. I am sure Mrs. B. (the juror) didn't either, and I am perfectly willing to waive any point whatever about it."

We find no reversible error because of what transpired between Dr. Nagel and the juror.

█ The jury returned a verdict of $21,000 in favor of Mrs. Conradson and one of $4,500 for Mr. Conradson. The trial court granted a new trial in Mrs. Conradson's case on the issue of damages unless plaintiff would consent to a reduction of the verdict to $18,000. The court based its order on the finding that "it * * * appearing to this Court that the verdict of $21,000 heretofore rendered is excessive, and was returned and given under the influence of passion and prejudice," a new trial is granted unless plaintiff consents to a reduction to the sum of $18,000. Plaintiff filed her written consent.

Defendants' claim of passion and prejudice is based largely on an affidavit of a resident of Waconia stating that during the trial one Byron Bunge, a member of the jury panel but not a juror sitting on the case, carried on a campaign of vilification against counsel for defendants because of ill feeling engendered in a former case in which Bunge had been a losing defendant in an action in which counsel for defendants in this case had acted as counsel for plaintiff.

The injuries of Mrs. Conradson were of such a severe nature that the verdict cannot be said to be excessive. At the time of the accident she was 28 years of age. She was the mother of two small children. In addition to the involuntary dribbling referred to above, she suffered from severe shock. She sustained a fracture of the fourth lumbar vertebra and fractures of the transverse process of the first, second, third, and fourth lumbar vertebrae. She also sustained a linear fracture of the tibia running into the knee joint. After being taken to the hospital, she was placed in a cast extending from her armpits to below her hips. The original cast remained on her from May 25 to the third week in July. The cast was then split down the sides so that she could roll out of it during the daytime. A new cast was applied early in August. About the middle of August, she was taken to Minneapolis, where a back brace was fitted so as to permit her to be out of bed. She wore the cast for 11½ weeks and was confined to her bed for 12½ weeks. Treatments continued after she was out of bed. Abrasions on her legs healed but

left scars. There remained stiffness in her knee. Her back still gave her trouble at the time of trial, and she was unable to lift objects such as household appliances or her children. Her doctors were of the opinion that her injuries would produce permanent pain and weakness in her back. Other things could be mentioned, but the above suffices to show that her injuries were serious.

Aside from the affidavit mentioned, the record is barren of anything that might arouse passion and prejudice. The trial court was in a position to determine whether the action of Bunge had a tendency to prejudice the jury against defendants' counsel to the extent that it would vent its ire on his client, and it was in a better position than we are to judge the effectiveness of such an alleged campaign. While it is true that the trial court stated in its order that the verdict was based on passion and prejudice, the record indicates nothing to sustain such finding. The injuries of Mrs. Conradson were of such a serious nature that the original verdict could well have been sustained. As reduced, it is not so excessive as to warrant a new trial.

■ Finally, defendants claim that it was reversible error to permit plaintiffs to dismiss as to Ralph G. Herrmann, who was brought into the case as an additional party defendant on motion of plaintiffs. Under M. S. A. 540.16, it is discretionary with the trial court whether an additional party shall be brought in as a defendant. Chapman v. Dorsey, 230 Minn. 279, 41 N. W. (2d) 438, 16 A. L. R. (2d) 1015; Gustafson v. Johnson, 235 Minn. 358, 51 N. W. (2d) 108. Having once been brought in as a party defendant, plaintiffs, under § 546.39, would have the same right to dismiss as if the defendant had been originally sued. Defendants are not in a position to object to the dismissal. Hefferon v. Reeves, 140 Minn. 505, 167 N. W. 423. At best, it would be discretionary with the trial court to determine whether the additional party brought in under § 540.16 should remain in the case. We find no abuse of discretion in granting plaintiffs' motion to dismiss as to such defendant.

Affirmed.